UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

BRYCE PASSINO,

                          Plaintiff,

               v.                                                  8:17-CV-1028
                                                                         (FJS/DJS)

THE CITY OF PLATTSBURGH,
RICHARD TUCKER, ADAM WOOD,
and NATHAN KASPRZAK,

                          Defendants.

---

| APPEARANCES | OF COUNSEL |
|---|---|
| **LUIBRAND LAW FIRM, PLLC**<br>950 New Loudon Road<br>Latham, New York 12110<br>Attorneys for Plaintiff | **KEVIN A. LUIBRAND, ESQ.** |
| **FITZGERALD MORRIS BAKER FIRTH, P.C.**<br>16 Pearl Street<br>P.O. Box 2017<br>Glens Falls, New York 12801<br>Attorneys for Defendants | **JOHN D. ASPLAND, ESQ.**<br>**MICHAEL BRANDI, ESQ.** |
| **MESSNER REEVES LLP**<br>805 Third Avenue<br>18th Floor<br>New York, New York 10022<br>Attorneys for Defendants | **ASISH NELLUVELY, ESQ.** |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Bryce Passino ("Plaintiff") brings this action against Richard Tucker ("Defendant

Tucker"), Adam Wood ("Defendant Wood"), and Nathan Kasprzak ("Defendant Kasprzak")

(together referred to as "Defendant Officers"), and the City of Plattsburgh ("Defendant City"), seeking compensatory damages, attorney's fees, expenses, and disbursements for alleged violations of his civil rights. *See generally* Dkt. No. 1, Complaint. Defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See generally* Dkt. No. 29.

## II. BACKGROUND

On the evening of September 17, 2016, Plaintiff was high on LSD, naked, and walking down the middle of Oak Street (a two-lane, one-way road) in Defendant City in the direction of oncoming traffic. *See* Dkt. No. 29-6, Defs' Stmt. of Material Facts at ¶¶ 17-20. Defendant Tucker, a police officer with Defendant City Police Department, received a call on his portable radio to check the situation, and he was the first to arrive on the scene. *See id.* at ¶ 22. Defendant Tucker called out to Plaintiff and told him to "stop" and "get on the ground." *See id.* at ¶ 24. Plaintiff did not respond to this request. *See* Dkt. No. 29-2-5, Record of Exhibits ("R.") at 58. Defendant Tucker then grabbed Plaintiff's arm, but he continued walking away. *See* Dkt. No. 29-6 at ¶ 25. After warning Plaintiff, Defendant Tucker tased him twice from afar and numerous times in drive stun mode (the exact amount is disputed) until he was on the ground and could not stand back up. *See* Dkt. No. 29-6 at ¶¶ 30-34, 39-40, 42-44.

At that point, Defendant Wood, another officer with Defendant City Police Department, arrived on the scene and struck Plaintiff to gain control over him. *See id.* at ¶¶ 48-51. The parties dispute where Defendant Wood struck Plaintiff and whether he used his hand or his flashlight. *See id.*; *see also* Dkt. No. 1 at ¶ 15. Defendant Wood eventually administered a short spray of oleoresin capsicum ("OC spray") (also known as pepper spray) to Plaintiff's face. *See* Dkt. No. 29-6 at ¶ 77. Plaintiff alleges that Defendant Kasprzak, another officer with

Defendant City Police Department, next arrived on the scene and also struck Plaintiff and sprayed OC spray in his face. *See* Dkt. No. 29-6 at ¶¶ 58-61, *see also* Dkt. No. 29-6 at ¶ 77. Eventually, seven or eight police officers piled on top of Plaintiff to restrain him, and he was strapped to a board and taken to the hospital by ambulance. *See* Wood Dash Cam, 5:17:40, 10:23:05[1]; *see also* R. at 68. Plaintiff was never charged with any crimes relating to the incident. *See* R. at 225-226. Several of the facts pertaining to the incident–-particularly whether Plaintiff was resisting arrest and threatening the safety of others around him—are in dispute, as discussed below.

Plaintiff filed a Notice of Claim with Defendant City on December 13, 2016, and he filed the instant suit on September 14, 2017. *See generally* Dkt. No. 1. He asserted the following four causes of action in his complaint:

(1) Denial of civil rights and excessive force against Defendant Officers pursuant to 42 U.S.C. § 1983;

(2) Failure to train or supervise employees against Defendant City pursuant to 42 U.S.C. § 1983;

(3) Unreasonable seizure and excessive force against Defendant Officers pursuant to Article I Section 12 of the Constitution of the State of New York and New York common law;[2] and

---

[1] There is video evidence from bystanders, a local laundromat security camera, and the officers' dash cameras that depict the scene. *See* Dkt. No. 29-7, Defs' Memorandum in Support (videos referenced within and attached to motion).

[2] This section of the Constitution of the State of New York prohibits unreasonable searches and seizures; it does not address excessive force. *See* N.Y. Const. Art. I, § 12. Furthermore, it appears from the allegations in the complaint that Plaintiff is claiming that his seizure was unreasonable because Defendant Officers used excessive force in effecting that seizure. Thus, the Court dismisses this claim *sua sponte* as redundant.

(4) Assault and battery against Defendant Officers pursuant to New York common law. *See* Dkt. No. 1 at ¶¶ 30-53.

Plaintiff further alleges that he suffered severe injuries from excessive force that caused his head and face to hit the roadway. *See* R. at 1; Dkt. No. 1 at ¶ 20. Specifically, Plaintiff asserts that he suffered severe head trauma, mental suffering, embarrassment, humiliation, fear, post-traumatic stress disorder, severe emotional distress, and medical expenses. *See* Dkt. No. 1 at ¶ 33.

## III. DISCUSSION

### A. Legal standard

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. Under this Rule, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all reasonable inferences, in a light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

### B. Plaintiff's excessive force claim

Defendants move for summary judgment on Plaintiff's excessive force claim, in which they argue that the force used was reasonable in light of the circumstances. *See* Dkt. No. 29-7, Defs' Memorandum in Support, at 11-20. "The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (citing *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). "Because '[t]he Fourth Amendment

test of reasonableness "is one of objective reasonableness,'" … the inquiry is necessarily case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004)) (internal citations omitted). In conducting that balancing test, courts are to consider the following three factors: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Graham*, 489 U.S. at 396, 109 S. Ct. 1865; *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006)).

In balancing these interests, courts must be "careful to evaluate the record 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Id.* (quoting *Jones*, 465 F.3d at 61 (quoting *Graham*, 390 U.S. at 396, 109 S. Ct. 1865)). "Moreover, [courts] are required to 'make "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."'" *Id.* (quotation omitted). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.'" *Id.* (quoting *Graham*, 490 U.S. at 397, 109 S. Ct. 1865) (internal quotation marks and citations omitted)).

"Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004) (citation omitted). In other words, "[a] court's role in considering excessive force claims is to determine whether a jury, instructed as to the

relevant factors, could reasonably find that the force used was excessive." *Brown v. City of New York*, 798 F.3d 94, 103 (2d Cir. 2015).

For the most part, the parties agree about the underlying facts of the case. However, they dispute many of the circumstances surrounding what happened that would show whether the force was excessive. The Court addresses these disputes of fact and how they relate to each of the *Graham* factors in turn.

Regarding the first *Graham* factor, the parties do not dispute that Plaintiff was engaging in disorderly conduct and obstructing traffic and that Defendant Tucker was conducting a "welfare check" when he arrived on the scene. *See* Dkt. No. 32, Pl's Memorandum in Opposition, at 11; Dkt. No. 29-7 at 2, 11; R. at 223. Disorderly conduct and obstructing traffic are non-criminal violations. *See* N.Y. Penal Law § 240.20(5). Defendants claim that Defendant Officers later observed Plaintiff resisting arrest, which is a class A misdemeanor. *See* N.Y. Penal Law § 205.30. Even if Plaintiff were resisting arrest, an issue of fact that the Court addresses below, the fact that Plaintiff committed only non-criminal violations and a non-violent misdemeanor weighs in his favor.

The parties dispute material facts surrounding the second and third *Graham* factors, *i.e.*, whether Plaintiff posed an immediate threat to the safety of the officers and others and whether he was attempting to evade arrest by flight. Plaintiff contends that he could not have possibly posed a serious and immediate threat to Defendant Officers and others while he was merely walking down the street, unclothed and unarmed, and near no one at all. *See* Dkt. No. 32 at 15. However, Defendants assert that Plaintiff posed an immediate threat to Defendant Tucker, to Plaintiff himself, and to members of the public. *See* Dkt. No. 29-7 at 11. Defendant Tucker

allegedly perceived Plaintiff as an immediate threat, believing that Plaintiff attempted to punch him and noting Plaintiff's apparent mentally altered and naked state. *See id.*

Plaintiff further asserts that, when Defendants Wood and Kasprzak arrived on the scene, he had already been tased and was on the ground, prone, naked, unarmed, and, at worst, attempting a low crawl. *See* Dkt. No. 32 at 18-19. He also argues that Defendant Tucker was standing over him holding his taser with the wires attached. *See id.* at 21. Furthermore, as more officers arrived on the scene and piled onto him, Plaintiff claims that it further diminished any possible threat he posed or any possibility of fleeing because the officers prevented his movement. *See id.* at 18-19, 21.

Defendants argue, however, that Plaintiff was engaging in a physical struggle, trying to get away or push back from the officers, and was actively resisting arrest. *See* Dkt. No. 33, Defs' Reply, at 6-7. They further contend that Plaintiff was swearing at Defendant Officers and failing to comply with their orders. *See* Dkt. No. 29-7 at 2, 4. Defendants also claim that Plaintiff's attempt to stand up and get away exacerbated the tense, uncertain situation and threatened the officers (including Defendants Wood and Kasprzak), bystanders, and Plaintiff himself. *See* Dkt. No. 29-7 at 15; *see also* Dkt. No. 33 at 7-8.

Plaintiff counters, however, that "struggling on the ground and refusing to offer one's hands is merely passive and does not amount to 'active resistance.'" *See* Dkt. No. 32 at 19 (citing *Garcia v. Dutchess Cnty.*, 43 F. Supp. 3d 281, 293-95 (S.D.N.Y. 2014)). Furthermore, Plaintiff asserts that any resistance he might have displayed was to get away from the pain from the series of tasers. *See id.* Plaintiff also argues that verbal objections to police actions do not warrant the use of police force. *See id.*

The parties dispute other material facts, as well, such as (1) whether Plaintiff swung his arm at Defendant Tucker before he was tased for the first time, (2) whether Defendant Wood hit Plaintiff on the head, (3) whether Defendant Wood struck Plaintiff with a flashlight or with his closed-fist, and (4) whether Defendant Kasprzak hit Plaintiff's head and face against the roadway. *See* Dkt. No. 29-7 at 13, 15; Dkt. No. 32 at 10.

Thus, there are clearly genuine issues of material fact about the circumstances surrounding the incident, particularly whether Plaintiff was a threat to the officers and if he was attempting to flee. Because such issues of fact exist, and a factfinder must resolve them, the Court denies Defendants' motion for summary judgment with regard to Plaintiff's excessive force claim.

### C. Qualified immunity

Defendants argue in their motion for summary judgment that Defendant Officers are entitled to qualified immunity. *See* Dkt. No. 29-7 at 20-24. However, whether Defendants are entitled to qualified immunity depends on the resolution of the same factual disputes as discussed above. Thus, the Court finds that those genuine issues of fact preclude it from granting Defendants' motion for summary judgment based on the doctrine of qualified immunity. *See Sloley v. VanBramer*, 945 F.3d 30, 36 (2d Cir. 2019) (stating that "the familiar standards that govern resolution of motions for summary judgment apply equally to such motions based on an assertion of qualified immunity" (citation omitted)).

### D. Plaintiff's *Monell* claim against Defendant City

Defendants contend that Defendant City is entitled to summary judgment on Plaintiff's *Monell* claim because Plaintiff has not presented any evidence to support the claim. *See* Dkt.

No. 29-7 at 24-28. A municipality may only be held liable under 42 U.S.C. § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[.]" *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "To establish a municipal policy or custom, a plaintiff may allege, among other things, 'a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees.'" *Hardie v. City of Albany*, No. 1:18-CV-470 (GLS/CFH), 2019 U.S. Dist. LEXIS 184833, *10 (N.D.N.Y. Oct. 25, 2019) (quoting *Prowisor v. Bon-Ton, Inc.*, 426 F. Supp. 2d 165, 174 (S.D.N.Y. 2006), *aff'd*, 232 F. App'x 26 (2d Cir. 2007) (citation omitted)).

To show that a municipality has violated § 1983 by failing to train its employees, Plaintiff must show (1) "the municipality's policy maker must know 'to a moral certainty' that [his or] her employees will confront a given situation," (2) "either the situation must present the employee with the sort of difficult decision that training or supervision would ameliorate or there is 'a history of employees mishandling the situation,'" and (3) "the 'wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.'" *Hardie*, 2019 U.S. Dist. LEXIS 184833, at *10-*11 (quoting *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992)) (internal quotation marks omitted).

"Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*[.]" *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985). Furthermore, in a case like this one, "where the policy relied upon is not itself unconstitutional," the Supreme Court held that "considerably more proof than the single incident will be necessary … to establish

both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." *Id.* at 824 (footnotes omitted).

Here, Plaintiff does not identify any other specific instances where Defendant City police officers violated a person's constitutional right against excessive force because they were not trained in using physical force on, or otherwise subduing, someone suffering from a severe mental disturbance or under the influence of drugs. *See generally* Dkt. Nos. 1, 32. Plaintiff merely generalizes that, without proper use of force training, situations where officers use excessive force "could happen daily" and making the wrong choice about whether to use force "would frequently cause the deprivation of a citizen's Fourth Amendment rights." *See* Dkt. No. 32 at 27. Thus, because Plaintiff has failed to allege more than this single incident of unconstitutional activity, the Court finds that Plaintiff cannot hold Defendant City liable under *Monell* and grants Defendants' motion for summary judgment with regard to this claim.

**E. Plaintiff's state-law assault and battery claims against Defendant Officers**

*1. Sufficiency of Plaintiff's notice of claim*

Defendants assert that they are entitled to summary judgment on Plaintiff's state-law assault and battery claims because Plaintiff did not name the individual Defendant Officers in the notice of claim that he filed with Defendant City. *See* Dkt. No. 29-7 at 28-29. However, the New York Court of Appeals has not yet determined whether a plaintiff must identify individual defendants in a notice of claim filed pursuant to General Municipal Law § 50-e. There is also a split among the New York Appellate Divisions and federal district courts on the issue. In *Garcia v. Cnty. of Westchester*, the court undertook an in-depth analysis of these splits. *See Garcia v. Cnty. of Westchester*, Dkt. Nos. 11-CV-7258, 11-CV-7260, 11-CV-7261, 11-CV-

7262, 11-CV-7264, 11-CV-7265, 11-CV-7267, 2017 U.S. Dist. LEXIS 211882, *95-*97 (S.D.N.Y. Dec. 11, 2017). The court ultimately held,

> In light of the fact that three out of the four New York appellate departments have declined to require plaintiffs to specifically name each individual defendant as a respondent in the notice of claim, and in light of the New York Court of Appeals' directive that "[t]he test of the sufficiency of a [n]otice of [c]laim is merely whether it includes information sufficient to enable the city to investigate" and that "[n]othing more may be required," *Brown v. City of New York*, 95 N.Y.2d 389, 740 N.E.2d 1078, 1080, 718 N.Y.S.2d 4 (N.Y. 2000) (citation and internal quotation marks omitted), the Court concludes that the requirement imposed by the First Department [in *Alvarez v. City of New York*, 134 A.D.3d 599 (1st Dep't 2015)] to specifically name each individual defendant as a respondent in the notice of claim is unlikely to be adopted by the New York Court of Appeals.

*Id.* at *96-*97.

This is the same approach that other courts in this and other Districts within the Second Circuit have followed. *See e.g.*, *Kennedy v. City of Albany*, No. 1:15-CV-491, 2015 U.S. Dist. LEXIS 143568, *7-*11 (N.D.N.Y. Oct. 22, 2015); *Joseph v. Deluna*, No. 15-CV-5602, 2018 U.S. Dist. LEXIS 48974, *14-*15 (S.D.N.Y. Mar. 23, 2018).

Furthermore, as the *Garcia* court explained, if the purpose of the notice of claim requirement is to provide sufficient information to permit Defendant City to investigate the claim, then Plaintiff has satisfied that purpose. It is clear that, in this case, Defendant City had sufficient notice to investigate. Chief of Police, Lieutenant Kiroy, and Sergeant Ritter interviewed Defendants Wood and Kasprzak within a few days to a week after the incident. *See* R. at 342-43, 395. Defendant Tucker testified that he learned of the notice of claim from other officers on duty when the station received it, and so he was on notice of Plaintiff's intent to file suit. *See* R. at 228. In addition, Defendant Tucker testified that detectives and administration "locked" the incident report in the police department's system so that patrolmen and supervisors

were unable to look at it further, which indicates that they knew that charges against the individual officers involved could be pending. *See* R. at 229.

Because three out of the four New York appellate departments and courts in this District and the Southern District have declined to require the naming of each individual defendant in a notice of claim, and because the notice of claim served its purpose of notifying Defendant City so that it could investigate the claim, the Court finds that Plaintiff satisfied the notice of claim requirements for his state-law claims. Therefore, the Court denies Defendants' motion for summary judgment on this issue.

### *2. Merits of Plaintiff's assault and battery claims*

Defendants additionally argue that they are entitled to summary judgment on Plaintiff's state-law assault and battery claims because Defendant Officers lacked the requisite intent to cause injury or to make offensive contact. *See* Dkt. No. 29-7 at 29-30. "Assault and battery claims under New York law are analogous to excessive force claims under the Fourth Amendment." *Dukes v. Troy Hous. Auth.*, No. 1:08-CV-479 (FJS/DRH), 2011 U.S. Dist. LEXIS 34483, *22 (N.D.N.Y. Mar. 30, 2011) (citation omitted). If a "plaintiff raises a triable issue of fact regarding the reasonableness of force used during the arrest, defendants' motion for summary judgment must also be denied to the extent that it can be construed to apply to plaintiff's claims under New York law.'" *Minasi v. City of Utica*, No. 6:10-CV-0975 (NAM/DEP), 2011 U.S. Dist. LEXIS 149259, *22 (N.D.N.Y. Dec. 28, 2011) (citing *Dukes*, 2011 U.S. Dist. LEXIS 34483).

Thus, because the Court denies Defendants' motion for summary judgment on Plaintiff's excessive force claims due to the existence of genuine issues of material fact, the

Court further denies Defendants' motion for summary judgment on Plaintiff's state-law assault and battery claims against Defendant Officers for the same reason.

## IV. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment with regard to Plaintiff's first cause of action for excessive force pursuant to 42 U.S.C. § 1983 and Plaintiff's fourth cause of action for state-law assault and battery against Defendants Tucker, Wood, and Kasprzak, *see* Dkt. No. 29, is **DENIED**; and the Court further

**ORDERS** that Defendants' motion for summary judgment based on the defense of qualified immunity, *see* Dkt. No. 29, is **DENIED**; and the Court further

**ORDERS** that Defendants' motion for summary judgment with respect to Plaintiff's second cause of action pursuant to 42 U.S.C. § 1983 for failure to train or supervise against Defendant City based on the theory of municipal liability, *see* Dkt. No. 29, is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's third cause of action for unreasonable seizure and excessive force pursuant to the New York State Constitution against Defendants Tucker, Wood, and Kasprzak is **DISMISSED** *sua sponte* as redundant; and the Court further

**ORDERS** that trial of this action shall commence at **10:00 a.m.** on **August 3, 2020**, in **Albany, New York**. The Court will issue a separate Final Pretrial Scheduling Order, setting forth the deadlines for filing pretrial submissions, including motions *in limine*, at a later date.

**IT IS SO ORDERED.**

Dated: January 31, 2020
       Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Judge