UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BRYCE PASSINO,

                     Plaintiff,

                                                                                              8:17-CV-1028

           v.                                                                                (DJS)

RICHARD TUCKER, *et al.*,

                     Defendants.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LUIBRAND LAW FIRM, PLLC<br>Attorney for Plaintiff<br>950 New Loudon Road<br>Latham, New York 12110 | KEVIN A. LUIBRAND, ESQ. |
| FITZGERALD MORRIS BAKER FIRTH, P.C.<br>Attorney for Defendants<br>68 Warren Street<br>Glens Falls, New York 12801 | JOHN D. ASPLAND, ESQ. |

**DANIEL J. STEWART**
**United States Magistrate Judge**

## DECISION and ORDER

      This matter is presently set for trial on July 19, 2021. Motions *in limine* have been filed by the parties, and the following Decision and Order resolves those pretrial matters.

## I. BACKGROUND

On September 17, 2016, members of the Plattsburgh Police were called to downtown Plattsburgh, New York, to check an area in response to a report of a naked man walking down the center of Oak Street. *See* Dkt. No. 35, Memorandum-Decision and Order dated January 31, 2020 ("MDO"), p. 2. Plaintiff Bryce Passino was under the influence of LSD at the time. *Id.* Defendant Richard Tucker was the first Plattsburgh Police Officer to respond and have contact with Plaintiff. *Id.* It is alleged that Plaintiff was noncompliant for a period, and that Defendant Tucker issued a warning and then tasered Plaintiff numerous times until he was on the ground. *Id.* Thereafter, Defendant Adam Wood and another officer became involved and Defendant Wood struck Plaintiff, either with his hand or with a flashlight. *Id.* Defendant Wood also pepper-sprayed Plaintiff in the face. *Id.* Next, Plaintiff alleges that Defendant Nathan Kasprzak entered the scene, struck Plaintiff and pepper-sprayed him in the back. *Id.* at pp. 2-3. According to Plaintiff, as a result of this event he received injuries including multiple fractures of his right cheek and right eye socket, bruising and swelling, a hematoma on the back of his head, a boot mark on his right cheek, and injuries to his wrist and fingers. Dkt. No. 50, Pl.'s Trial Brief, p. 4.

At issue in this Fourth Amendment civil rights case, therefore, is whether the Police Officers' actions were "objectively reasonable" in light of the facts and

circumstances confronting them.[1]  *Graham v. Connor*, 490 U.S. 386, 397 (1989).  In making the determination regarding objective reasonableness, the court and the jury does not engage in a mechanical application of the standard, but rather considers the unique facts and circumstances of each particular case.  Those circumstances include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."  *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).

## II. DEFENDANTS' MOTION TO PRECLUDE EXPERT TESTIMONY

As part of the discovery process, Plaintiff has identified an expert who he intends to call in support of his case.  That expert, former New York State Trooper Mark Nardacci, has supplied an expert report.  Dkt. No. 60-1, Aspland Aff., ¶¶ 5-7, Exs. A & B.  As an initial matter, Mr. Nardacci was omitted from Plaintiff's witness list when the matter was originally scheduled for trial.  However, the trial was then rescheduled and Plaintiff's intent to call his use of force expert was clarified. This procedural issue has therefore been resolved.

---

[1] Plaintiff also brought a *Monell* claim against the City of Plattsburgh, but that claim has been dismissed.  MDO at pp. 8-10.

Presently before the Court is Defendants' Motion to exclude this expert testimony. Dkt. No. 60. The bases for the requested exclusion include the alleged insufficiency of the expert's qualifications, the faulty foundational basis of the expert's opinion, and the belief that the expert's testimony would subvert the role of the jury. Aspland Aff. at pp. 3-14. Plaintiff's counsel has opposed the Motion, and notes that the proposed expert has twenty years of experience as a New York State Trooper and was a defensive training instructor in the New York State Police Academy, and is therefore highly qualified. Dkt. No. 69-1, Luibrand Aff., pp. 15-17. He contends that the proposed expert's opinions are properly predicated on facts and experience and not rooted in speculation, and would assist the jury in its deliberative function, and therefore should be admitted. *Id.*

Under the Federal Rules of Evidence, expert witnesses may testify under the following conditions:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. The Supreme Court has ruled that Rule 702 assigns to district courts the gatekeeper function – "ensur[ing] that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals,*

*Inc.*, 509 U.S. 579, 589 (1993). As noted in *Kumho Tire Co. v. Carmichael*, the court's "general 'gatekeeping' obligation [] applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." 526 U.S. 137, 141 (1999) (quoting FED. R. EVID. 702(a)). Moreover, "[i]t is a well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions, representing a departure from the previously widely followed, and more restrictive, standard. . . ." *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005). As recently noted by Judge Kahn,

> The flexibility contemplated by Rule 702 is particularly helpful when an expert's testimony does not rest on traditional scientific methods. "In such cases, where a proposed expert witness bases her testimony on practical experience rather than scientific analysis, courts recognize that '[e]xperts of all kinds tie observations to conclusion through the use of what Judge Learned Hand called 'general truths derived from . . . specialized experience.'"

*Walker v. Schult*, 365 F. Supp. 3d 266, 276 (N.D.N.Y. 2019) (quoting *Davis v. Carroll*, 937 F. Supp.2d 390, 412 (S.D.N.Y. 2013) & *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. at 149-50).

Thus, this Court's inquiry into whether an expert meets Rule 702's requirements includes a review of (1) the qualifications of the proposed expert; (2) whether each proposed opinion is based upon reliable data and reliable methodology; and (3) whether the proposed testimony would be helpful to the trier of fact. *See, e.g., Nimely v. City of New York*, 414 F.3d at 396-97. Applying the above standard to the proposed testimony

of Mr. Nardacci, the Court concludes that he is qualified in the area of police practices and use of force standards. As noted by other courts, the testimony of a police procedures expert may be found reliable by virtue of that expert's experience. *See Bah v. City of New York*, 2017 WL 435823, at *11 (S.D.N.Y. Jan. 31, 2017) (expert testimony properly predicated where it "draws on his experience, education, and training in making his conclusions, including his time as a Master Firearms Instructor.").

In the present case, former State Trooper Nardacci has over two decades of experience with use of force by police officers, including as a field training officer and a defensive tactics instructor in the Police Academy. He has specific experience regarding arrest and restraint procedures, the use of force continuum, standards for the use of pepper spray, proper and improper use of a police flashlight, and dealing with emotionally distraught individuals. Dkt. Nos. 60-2 at p. 2 & 60-3, Nardacci Report, pp. 1-4. While Defendants are correct that it appears Mr. Nardacci has not been specifically trained on the use of a taser, as he retired before the State Police were outfitted with that particular tool, this issue goes to the weight of the evidence and not its admissibility. This is particularly the case where Mr. Nardacci has over twenty years of experience dealing with the use of force generally, and knowledge of the minimum standards for application of force on individuals who do not pose a risk to police officers or third parties. Similarly, the fact that the proposed expert did not teach at the Zone 9 Police Academy where the Plattsburgh officers were trained may create a legitimate issue for cross-examination, but

does not preclude his testimony regarding minimum standards. *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995) ("Disputes as to the strength of [an expert's] credentials, faults in his . . . methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony.").

Having found that the proposed expert is qualified, and that his years of experience satisfy the reliability standard, the final inquiry for the Court is whether the proposed testimony is appropriate and will assist the trier of fact. As an initial point, the Court agrees with defense counsel that certain proposed testimony goes too far. For example, in the conclusion of his expert report, Nardacci states: "the application of force by Officers Wood, Tucker and Kasprzak was unreasonable and unnecessary, and an excessive use of force under the circumstances applicable to police officers." Nardacci Report at p. 4. In other points in his report, however, the expert points to specific training practices and standards applicable to police officers arresting and detaining individuals and opines how certain conduct of Defendants depicted in videos deviated from those accepted standards. *Id.* (*E.g.*, "Standard police procedure prohibits use of a flashlight as a tactical weapon, with the possible exception for an extreme emergency situation involving the use or threatened use of deadly physical force"; "[t]here is no authority in any police training, instruction, policies or practices to ever strike an individual experiencing a psychological event or impairment and in fact the training is contrary to that"; "Police Officer Wood's use of the OC spray occurred after Mr. Passino was

subdued and, on the ground, and would be considered . . . not in line with his police training.").

In the Court's view, it would be proper and potentially helpful for the expert to testify to the training and the minimum standards applicable to police officers, and to express an opinion as to whether the conduct alleged, or actions depicted on video, either complied with or violated those standards. This is particularly true where issues such as use of a police flashlight as a weapon, use of pepper spray and tasers, and dealing with emotional disturbed individuals may well be ones outside the ken of the jury. It would not be appropriate, however, for the expert to testify as to whether the conduct of the police officers was objectively reasonable or unreasonable, as that decision is for the jury to make based upon its application of my instruction and their common sense. *See Hygh v. Jacobs*, 961 F.2d 359, 363-64 (2d Cir. 1992) ("This circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion.").

The Second Circuit recently considered the appropriateness of expert testimony concerning police practices in a case in which the jury was to make a determination as to the reasonableness of a police officer's conduct. The Second Circuit approved the District Court's admission of that expert testimony, and stated as follows:

> [The expert] testified to minimally accepted police practices, "a baseline type of behavior or protocols that law enforcement officers follow." Trial Tr. at 1776. He testified only about what minimally accepted police practices required and about his opinion that Volpe's conduct departed from accepted police practices. "When an expert offers an opinion relevant to

- 8 -

> applying a legal standard such as probable cause [or *Brady*], the expert's role is limited to describing sound professional standards and identifying departures from them," *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013) (internal quotation marks omitted), which is precisely what Fischer did in this case. This expert testimony on applicable professional standards is relevant because it "can give a jury a baseline to help evaluate whether a defendant's deviations from those standards were merely negligent or were so severe or persistent as to support an inference of intentional or reckless conduct that violated a plaintiff's constitutional rights." *Id*. at 721-22. It is true that Fischer's "opinions had direct implications for applying legal standards," but that is exactly "why his testimony was relevant." *Id*. at 721. The court correctly limited Fischer's testimony to professional practices and departures in this case, and Fischer did not stray from these bounds.

*Restivo v. Hessemann*, 846 F.3d 547, 579-80 (2d Cir. 2017); *accord*, *Bah v. City of New York*, 2017 WL 435823, at *12 ("The jury arriving at an answer to the question of whether the defendant officers' actions conformed with accepted police practices is not an end in and of itself, but rather a means by which the jury can understand the full set of circumstances surrounding the force used on Bah so as better to conduct their analysis, which will take into account the totality of those circumstances, as to whether the force used on Bah was reasonable. . . ."); *see also Lombardo v. City of St. Louis, Missouri*, 2021 WL 2637856, at *2 (U.S. June 28, 2021) (noting that evidence of a police policy relating to getting a suspect off his stomach as soon as he is handcuffed, and its alleged violation, could be pertinent to the factfinder on the issue of "the relationship between the need for the use of force and the amount of force used, the security problem at issue, and the threat – to both [the suspect] and others – reasonably perceived by the officers.").

Both parties highlight a recently issued Northern District Decision by Magistrate Judge Thérèse Dancks, *Hansen v. Warren Cty.*, 2019 WL 5853392, at *5 (N.D.N.Y. Nov. 8, 2019). In that case a police expert was precluded from testifying at trial on behalf of the plaintiff. *Id.* The reason for that exclusion dealt specifically with the qualifications of that particular expert. *Id.* at *5 (noting that the proposed expert has never been a policeman, attended or taught at the police academy, executed an arrest, or developed police procedures or policies, and therefore "he is not qualified to testify to the issues presented in this case, namely, a police officer's use of non-lethal physical force to effectuate an arrest without the use of any firearm, Taser, or chemical spray."). Judge Dancks' decision should not be read to preclude qualified police experts generally. Indeed, the defense attorney in the *Hansen* case offered, and the court allowed, expert testimony concerning police use of force practices where the expert had qualifications similar to that of former Trooper Nardacci. *Id.* at *6. ("[U]nlike [plaintiff's expert], the Court finds [the defense expert] is well-qualified to opine on the issue of use of force in this case based on his experience and credentials, which include, *inter alia*, more than fifteen years of experience as an active police officer, formal and specialized education training in police operations including the use of force and defensive tactics by police, experience using and deploying non-lethal force in police arrest scenarios, and his experience training police officers in the proper and safe use of defensive tactics and use of force to effectuate arrests.").

In sum, after considering the parties' arguments and upon review of Mr. Nardacci's expert report in light of the governing standard, Defendants' Motion to Preclude is denied. Plaintiff's expert will be allowed to testify concerning the appropriate police practices and minimum standards at issue, and alleged deviations and departures from those standards. Plaintiff's expert will not be allowed to testify, however, regarding his opinion of the reasonableness of Defendants' conduct, or the officers' state of mind. Those issues are for the jury. As with this and every other evidentiary issue, the Court will exercise its authority during trial to prevent superfluous, cumulative, or otherwise inappropriate testimony.

### III. PLAINTIFF'S PRE-TRIAL MOTIONS

Plaintiff seeks a number of *in limine* rulings, Dkt. No. 69, which the Court addresses below.

### A. Plaintiff's Military Discharge

Plaintiff first seeks to preclude testimony about the facts and circumstances of his discharge from the United States Army. Luibrand Aff. at ¶¶ 4-12. Plaintiff received a "General Discharge" after an incident in which he struck a superior. *Id.* at ¶¶ 5-6. Plaintiff contends that this incident is irrelevant and thus inadmissible. *Id.* at ¶ 7. Defendants seek admission of this information on the theory that it correlates to the facts in dispute here. They contend that Plaintiff's military record is admissible "to show that Mr. Passino had knowledge of the likely outcome of his actions of becoming intoxicated" because Plaintiff

- 11 -

testified that the incident in the military arose, in part, due to his use of alcohol, and the facts here concern Plaintiff being under the influence of an intoxicant. Dkt. No. 72 at ¶¶ 7-8 & 18. Defendants intend to argue that Plaintiff has a proclivity for aggressive behavior when intoxicated. *See id.* at ¶ 27.

The Court concludes that admission of the underlying facts at issue regarding Plaintiff's discharge should be precluded. Defendants' attempt to draw a parallel between an alcohol-related incident in the military and the use of drugs in this case does not represent a close comparison, bears at best slim relevance to the question of whether excessive force was used, and risks substantial prejudice to Plaintiff. The theory of relevance proffered by Defendants would seek to place Plaintiff's possible history of substance abuse at issue. Courts, however, recognize that substance abuse "is considered as much a disease as a reflection of character or habit." *Ortiz v. City of New York*, 2017 WL 5613735, at *9 (S.D.N.Y. Nov. 21, 2017). Plaintiff's alleged intoxication when encountered by Defendants is clearly relevant to the facts at issue. Raising prior instances of such intoxication and behavior attributable to it, however, is prejudicial within the meaning of Federal Rule of Evidence 403. Moreover, permitting this evidence would run the risk of diverting the jury's attention from the facts of this discrete incident to a "mini trial" regarding the facts of Plaintiff's military service which, given the attenuated theory of relevance and the clear risk of prejudice, the Court finds is unwarranted. *See Kaufman v. Columbia Mem'l Hosp.*, 2014 WL 3888229, at *4 (N.D.N.Y. Aug. 7, 2014).

Should Plaintiff testify about his military service, Defendants are free to inquire about the fact that he received a general discharge as opposed to an honorable discharge, but should inquire no further.

### B. An Alleged Incident with a Dog and its Owner

Plaintiff seeks to preclude Defendants from eliciting testimony about whether "plaintiff once kicked a dog." Luibrand Aff. at ¶ 13 (internal quotations omitted). To the extent that Defendants seek to question Plaintiff about whether he ever kicked a dog, the Court finds that such testimony is prejudicial and bears no relevance to the facts at issue. Accordingly, any questioning about whether Plaintiff kicked a dog is precluded under Federal Rule of Evidence 403.

Defendants, however, contend that as a result of that incident, which allegedly occurred prior to the events to be tried, the dog's owner punched Plaintiff in the eye, fracturing his eye socket. Dkt. No. 72 at ¶ 35. Since Plaintiff claims that this injury occurred at the hands of Defendants, whether it was in fact a pre-existing injury may well be relevant. The Court, therefore, will consider at trial the relevance and admissibility of a prior physical altercation should any party seek to raise it.

### C. Plaintiff's Prior Conviction

Plaintiff next seeks to preclude the introduction of evidence regarding Plaintiff's conviction for driving while ability impaired in violation of New York Vehicle and Traffic Law section 1192. Luibrand Aff. at ¶¶ 17-54. That conviction represents a "non-

criminal violation[]" under New York law. *See Gonzalez v. United States*, 2016 WL 270451, at *1 (S.D.N.Y. Jan. 21, 2016). While arguing for the admissibility of the conviction, Defendants have failed to articulate a basis for finding the conviction relevant and admissible under the Federal Rules of Evidence. *See* Dkt. No. 72 at ¶¶ 42-46. The conviction appears to bear no relevance and evidence of it would be prejudicial to Plaintiff. *See Ali v. Connick*, 2016 WL 3080799, at *4 (E.D.N.Y. May 31, 2016). The Court, therefore, grants the Motion to preclude evidence of this conviction.

### D. The Admissibility of Photographs

Plaintiff also seeks an order regarding the admissibility of certain photographs. Luibrand Aff. at ¶¶ 55-78. Defendants object to the admission of the photos. Dkt. No. 72 at ¶¶ 47-82. To the extent Defendants seek to preclude the photographs based on untimely disclosure or prejudice, the Court rejects that argument. The photographs at issue have been known to Defendants for some time. While Defendants claim prejudice from the fact that they have not deposed the individual who took the photos, it does not appear that, despite the expiration of the discovery deadline, they sought leave to do so after becoming aware of them.

The Court will otherwise reserve decision on the admissibility of the photographs until trial given that a primary point of contention between the parties relates to whether Plaintiff can establish a proper foundation for the photos and the Court cannot make a ruling on that question until Plaintiff attempts to lay an appropriate foundation.

## IV.  CONCLUSION

**ACCORDINGLY**, it is hereby

**ORDERED**, that Defendants' Motion to Preclude Expert Testimony is **GRANTED IN PART** and **DENIED IN PART** as set forth above; and it is further

**ORDERED**, that Plaintiff's Motion *in limine* is **GRANTED IN PART** and **DENIED IN PART** as set forth above**.**

Date:  July 1, 2021
       Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge